IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| PARIS GARDNER<br>   Plaintiff,<br><br>vs.<br><br>OFFICER BEN JOHNSON, OFFICER STEVE JOHNSON, and THE CITY OF ROCKFORD, ILLINOIS<br>   Defendants. | Case No. 08 C 50006<br><br>Magistrate Judge<br>P. Michael Mahoney |

## MEMORANDUM OPINION AND ORDER

**I. Introduction**

Before the court are four motions: (1) Plaintiff's motion to compel production of files corresponding to complaints ("Plaintiff's First Motion to Compel"), (2) Plaintiff's motion to enforce the court's May 19, 2009 Order ("Plaintiff's Motion to Enforce"), (3) Plaintiff's motion for sanctions and to compel additional production ("Plaintiff's Motion for Sanctions"), and (4) Plaintiff's motion to compel production of the documents requested in Plaintiff's requests to produce dated August 28 and 31, 2009 ("Plaintiff's Second Motion to Compel").

**II. Background**

On January 9, 2006, Officer Benjamin Johnson arrested Plaintiff for a noise ordinance violation and for resisting or obstructing a peace officer. According to the pleadings, during the arrest, there was a physical altercation between Officer Benjamin Johnson and Plaintiff. As a result of the arrest and the altercation, Plaintiff filed a complaint with the Rockford Police

1

Department Internal Affairs Division (now the Office of Professional Standards, or OPS) alleging that Officer Johnson used excessive force, falsely arrested Plaintiff, and failed to properly investigate the noise complaint.[1] OPS conducted an investigation regarding the complaint, made findings, and issued a report.

On January 4, 2008, Plaintiff filed this lawsuit alleging a number of claims under 42 U.S.C. § 1983, including excessive force, false arrest, and conspiracy. Plaintiff also asserts claims pursuant to *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658 (1978). Under *Monell*, Plaintiff asserts that the City of Rockford engages in a custom, policy, or practice whereby supervisory individuals fail to properly discipline officers from the police department that commit acts of excessive force, false arrest, or malicious prosecution. (Compl. ¶ 20.) Plaintiff also asserts under *Monell* that the City of Rockford engages in a custom, policy, or practice whereby supervisory individuals fail to properly investigate complaints that Rockford police officers engaged in excessive force, false arrest, and malicious prosecution. (*Id.*) Lastly under *Monell*, Plaintiff asserts that the City of Rockford engages in a custom, policy, or practice whereby supervisory individuals fail to take proper remedial action against police officers by whom they determine that an act of excessive force, false arrest, or malicious prosecution was committed.[2] (*Id.*)

**III. Plaintiff's First Motion to Compel and Plaintiff's Motion to Enforce**

---

[1] At some point in late 2006 or early 2007, the Internal Affairs Division changed its name to the Office of Professional Standards. (Lt. Hopkins dep. 13:3–5, Aug. 17, 2009.) For simplicity, the court will use the acronym "OPS" when referring to either the Internal Affairs Division or the Office of Professional Standards.

[2] Plaintiff also claims a violation of the Equal Protection Clause, but the issues presented to the court at this time are irrelevant to that claim.

On May 19, 2009, this court ordered Defendants to produce documents responsive to Document Requests 12 and 13 of Plaintiff's second request to produce. *Gardner v. Johnson et al.*, No. 08-C50006, at 6 (N.D. Ill. May 19, 2009) (Crt. Doc. 63). Document Request 12 sought production of "any and all complaints, made against the Rockford Police Department or against any of its employees, for use of excessive force by one of its agents or employees." *Id*. Document Request 13 sought "[a]ny and all documents sufficient to identify the results of any internal investigations conducted of the complaints as described in Document Request # 12." *Id*. The court limited the documents that Defendants had to produce to those dated from January 10, 2003 to January 10, 2006, finding that producing documents older than January 10, 2003 would be unnecessarily burdensome and that documents of that age would "add little probative value to Plaintiff's case." *Id*. at 5.

Defendants represent that they have produced the handwritten complaints and any affidavits that might accompany them, index cards cataloging the complaints, and typed complaint summary sheets. (Defs.' Resp. to Pl.'s Mot. to Enforce ¶ 4.) The typed complaint summary sheets contain information about the complainant, the allegations in the complaint, the recommendation from OPS regarding the allegations, and any action taken. (*See* Pl.'s Mot. to Enforce Ex. F.) Defendants redacted portions of the recommendations from the typed complaint summary sheets dated from 2003 and 2004. (Defs.' Resp. to Pl.'s Mot. to Enforce ¶ 6.) Defendants also redacted the recommendations from the 2005 typed complaint summary sheets produced according to the May 19 order. However, Defendants had already produced the 2005 typed complaint summary sheets unredacted. Defendants have not asserted that producing the unredacted documents was an inadvertent disclosure of privileged information. Therefore, any

3

privilege that Defendants could have asserted regarding the 2005 complaint summary sheets is waived.

It does not appear that Defendants produced a privilege log with respect to the redactions to the 2003 and 2004 typed complaint summary sheets. (Pl.'s Mot. to Enforce ¶ 2.) Defendants also did not produce the full investigative reports corresponding to each complaint filed.

Plaintiff's First Motion to Compel seeks to compel the production of the full investigative reports that correspond to complaints of excessive force. Plaintiff purports to need the full investigative reports to determine the outcomes of any investigations conducted as a result of the complaints. Determining the outcomes may be necessary to establish Plaintiff's claims under *Monell*.

Plaintiff's Motion to Enforce seeks to compel production of all the typed complaint summary sheets with the recommendations unredacted. (Pl.'s Mot. to Enforce ¶ 13.) Plaintiff's Motion to Enforce also seeks to compel production of all affidavits signed by complainants who filed a complaint with OPS alleging excessive force (Pl.'s Mot. to Enforce ¶ 14), and the annual reports containing statistics regarding complaints of excessive force and their outcomes dating from 2001 to present (*Id*. ¶ 15).

Defendants argue that granting Plaintiff's Motion to Enforce might moot Plaintiff's First Motion to Compel. (Defs.' Resp. to Pl.'s First Mot. to Compel ¶ 6.) Defendants suggest that production of the typed complaint summary sheets with the recommendations unredacted may be sufficient for Plaintiff to "inquire about and fully analyze or categorize the complaints of excessive force and their outcomes." (Defs.' Resp. to Pl.'s First Mot. to Compel ¶ 6.) This would negate Plaintiff's need for the full investigative reports. Defendants argue that if the court

4

orders production of the unredacted typed complaint summary sheets, then the court should deny Plaintiff's First Motion to Compel.

Notwithstanding Defendants' argument that producing the unredacted typed complaint summary sheets would moot Plaintiff's First Motion to Compel, Defendants still assert that the redactions to the typed complaint summary sheets are appropriate because the redacted portions "do[] not contain allegations by the complainant[s]." (Defs.' Resp. to Pl.'s Mot. to Enforce ¶ 5.) At a hearing before the court on October 7, 2009, Defendants' counsel stated that the redacted information is "subjective to the investigating officer's opinion." (Hr'g Tr. 4:12–13, Oct. 7, 2009.)

Under Rule 26(b), parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." *Fed. R. Civ. P.* 26(b). "For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* A party asserting a privilege regarding information otherwise discoverable must "(i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." *Fed. R. Civ. P.* 26(b)(5)(A); *Allendale Mut. Ins. Co. v. Bull Data Sys., Inc. et al.*, 145 F.R.D. 84, 88 (N.D. Ill. 1992). The court can order that "privileged documents be disclosed as a sanction . . . if the party that authored the [privilege] log . . . displayed willfulness, bad faith or fault." *Muro v. Target Corp. et al.*, 250 F.R.D. 350, 365 (N.D. Ill. 2007).

5

Defendants were required under Rule 26(b)(5) to produce a sufficient privilege log with regard to the redacted portions of the typed complaint summary sheets. Defendants failed to produce a privilege log whatsoever. Without a privilege log, it is impossible for either the court or the Plaintiff to know what privilege Defendants are asserting. The court cannot weigh the importance of the privilege. Defendants' production of the 2005 typed complaint summary sheets unredacted indicates a lack of interest in keeping the information contained in the recommendation portions of the typed complaint summary sheets confidential. The Plaintiff's interest in knowing the outcomes of the complaints filed with OPS is great. Because Defendants failed to properly assert a privilege or file a privilege log, and because Defendants' interest in keeping the information confidential seems minimal while Plaintiff's interest in having the information is high, the court orders Defendants to produce the 2003 and 2004 typed complaint summary sheets unredacted by January 20, 2010.

It appears that production of the typed complaint summary sheets unredacted may moot Plaintiff's First Motion to Compel. The recommendations portions of the typed complaint summary sheets may state the outcomes of investigations conducted in response to complaints filed. Inasmuch, the court denies Plaintiff's First Motion to Compel without prejudice.

Plaintiff's Motion to Enforce also seeks the signed affidavits that accompanied the written complaints. Defendants represent that they have "produced the affidavits that accompanied excessive force complaints from January 10, 2003, through January 10, 2006." (Defs.' Resp. to Pl.'s Mot. to Enforce ¶ 9.) Thus, the court finds that the portion of Plaintiff's Motion to Enforce seeking production of signed affidavits is moot.

Third, Plaintiff's Motion to Enforce seeks the annual statistical summaries of complaints

and their outcomes. The statistical summaries of complaints and their outcomes seem relevant to Plaintiff's *Monell* claims, and are likely to benefit Plaintiff's case. Defendants do not address the burden of producing these summaries in their response. Defendants are either to produce the statistical summaries for the years 2003, 2004, and 2005, or they are to provide a specific internet address at which the general public can access them. Defendants have until January 20, 2010 to make the statistical summaries available to Plaintiff.

## IV. Plaintiff's Motion for Sanctions

On May 21, 2008, Defendants produced to Plaintiff the investigation file pertaining to Plaintiff's complaint of excessive force. (Pl.'s Mot. for Sanctions ¶ 5.) Defendants redacted the entire "Officer's Report" from the investigative file claiming the self-critical analysis privilege. (*Id*. ¶ 6.) The Officer's Report is written by the investigating OPS officer, in this case Lt. Steven Johnson, and contains information on the complainant, the witnesses, and the officers at the scene. (*Id*. Ex. 22.) It also contains the OPS investigating officer's findings with regard to the OPS investigation. (*Id*.)

On August 13, 2008, the court ordered Defendants to produce the Officer's Report, but allowed Defendants to redact portions that may be subject to the self-critical analysis privilege. *Gardner v. Johnson et al.*, 08-C50006, at 3 (N.D. Ill. Aug. 13, 2008) (Crt. Doc. 33). The court found that any privilege regarding Lt. Steven Johnson's findings had been waived because OPS had included those findings in a letter mailed to Plaintiff from Lt. Steven Johnson after the investigation. *Id*. The court ordered Defendants to produce the Officer's Report with those findings unredacted, as well as Lt. Steven Johnson's letter to Plaintiff informing him of OPS's findings. *Id*.

It became clear after conducting the depositions of Lt. Steven Johnson and former Interim Police Chief Iasparro on August 17 and September 20, 2009, respectively, that Defendants had not produced the entire investigation file. Former Interim Chief Iasparro's deposition was stopped short due to the discovery disputes. (Pl.'s Mot. for Sanctions fn. 5; Defs.' Resp. to Pl.'s Mot. for Sanctions ¶ 36.) Lt. Steven Johnson's deposition was also stopped short. (Defs.' Resp. to Pl.'s Mot. for Sanctions ¶ 36.) The parties' attorneys held a conference pursuant to Local Rule 37.2, and Defendants produced the entire investigation file on September 23, 2009. (Pl.'s Mot. for Sanctions ¶ 40.) The September 23 production included documents that had not been produced before. (*Id*.) Those documents consist of, among other things, (1) pages from the Officer's Report revealing a previously undisclosed third finding made by Lt. Steven Johnson, (2) 19 pages of interviews and other notes taken by Lt. Steven Johnson, and (3) an email from Officer Benjamin Johnson's supervisor, Lt. Getty, to Lt. Steven Johnson stating, "I did shred the letter." (*Id*. ¶ 40 & Ex. 26.) Plaintiff seeks to depose witnesses regarding these documents at Defendants' expense, including Lt. Steven Johnson, Lt. Getty, and former Interim Chief Iasparro.

Plaintiff also alleges in his motion for sanctions that Defendants intentionally misrepresented that they were not in possession, custody, or control of the original Probable Cause Statement written by Officer Benjamin Johnson. (*Id*. ¶ 22.) Defendants' counsel told Plaintiff's counsel that the Probable Cause Statement was stored at the Winnebago County Clerk's Office. (*Id*.) However, Plaintiff learned that the Probable Cause Statement was actually under Defendants' control and stored at the Rockford Police Department Records office. (*Id*. ¶ 25.) Plaintiff's counsel approached Defendants' counsel with this information, and Defendants'

counsel made the document available on September 17, 2009. (*Id*. ¶ 27.)

Finally, Plaintiff alleges that Defendants have been misrepresenting that only one computer database exists storing complaints of excessive force. In the past, Defendants have represented that their one database is not searchable by the nature of the complaint. Plaintiff asserts that Defendants have produced computer printouts from what appear to be two different databases. (*Id*. ¶ 51.) If a second database exists and is searchable by the nature of the complaint, Plaintiff argues that the burden for producing complaints of excessive force dating more than three years prior to the incident would be reduced. In that case, Plaintiff argues that Defendants should be required to produce complaints of excessive force dating back to 2001.

Rule 37(c) provides the following:

> If a party fails to provide information . . . as required by Rule 26(a) or (e), . . . the court, on motion and after giving an opportunity to be heard: (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure; (B) may inform the jury of the party's failure; and (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)–(vi).

*Fed. R. Civ. P.* 37(c)(1). Rule 26(e) requires a party that has responded to a request for production to supplement or correct its disclosure or response "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." *Fed. R. Civ. P.* 26(e). A party that failed to provide information as required in Rule 26(e) can avoid sanction by showing that the failure was substantially justified or harmless. *Fed. R. Civ. P.* 37(c)(1).

Defendants' counsel argues that she complied with Rule 26(e) regarding the investigative file. She represents that "[a]t the time of Defendant Steve Johnson's deposition, [she] believed

9

her file containing the copy of the internal investigation file was complete." (Defs.' Resp. to Pl.'s Mot. for Sanctions ¶ 11.) Defendants' counsel further represents that "[o]nce [she] realized documents were not produced, [she] hand-delivered a copy of the internal investigation file as it was maintained by [OPS] the very next day in court." (*Id*. ¶ 32.) Also, once she "learned additional documents existed to satisfy Plaintiff's Production Requests, Defendants' counsel immediately produced the documents." (*Id*. ¶ 35.)

Regarding the original Probable Cause Statement, Defendants' counsel represents that she mistakenly believed the document to be stored in the Winnebago County Clerk's Office. (*Id*. ¶ 18.) "Upon learning from Plaintiff's counsel that the original [P]robable [C]ause [S]tatement was in the [Rockford Police Department] Records Division, [she] made arrangements for Plaintiff's counsel to view the document." (*Id*. ¶ 19.)

Finally, Defense counsel continues to maintain that only one computer database existed during the relevant time period. She further asserts that it is not searchable in a reliable way by the nature of the complaint.

Plaintiff has not made a sufficient showing that Defendants' failure to produce the full investigative file or the original Probable Cause Statement was intentional on the part of either Defendants or Defendants' counsel. But, the third finding made by Lt. Steven Johnson, first produced on September 23, is crucial to Plaintiff's claim. Also, the 19 pages of interviews and notes taken by Lt. Steven Johnson and the mysterious email from Lt. Getty to Lt. Steven Johnson may be relevant to Plaintiff's case. Because these documents may be relevant, Defendants may need to depose Officer Ben Johnson, Lt. Steven Johnson, Lt. Getty, and former Interim Chief Iasparro regarding them.

Prior to receiving the September 23 documents, Plaintiff had opted not to take Lt. Getty's deposition. Had the documents been produced earlier, Plaintiff may have decided to depose Lt. Getty at that time. If Plaintiff chooses to depose Lt. Getty now, Plaintiff would not incur any more costs than he would have had he taken Lt. Getty's deposition earlier. The court will not order Defendants to pay for a deposition that would have occurred anyway.

Reconvening Lt. Steven Johnson's deposition may be another story. The new documents produced on September 23 are from the Officer's Report prepared by Lt. Steven Johnson. Had Plaintiff had the documents at the time Lt. Steven Johnson's deposition first occurred, Plaintiff's counsel could have questioned Lt. Steven Johnson regarding them at that time. Instead, Plaintiff must reconvene the deposition to question Lt. Steven Johnson about the documents. In doing so, Plaintiff may incur costs and expenses that Plaintiff would not have occurred had the documents been produced prior to Lt. Steven Johnson's first deposition. The court finds that Defendants should reimburse Plaintiff for those additional costs and expenses. If Plaintiff reconvenes Lt. Steven Johnson's deposition, Plaintiff should submit a petition for fees to the court within a reasonable time outlining the additional costs and expenses incurred as a result of reconvening the deposition.

The court finds that Plaintiff has not demonstrated a sufficient need to reconvene the depositions of either former Interim Police Chief Iasparro or Officer Benjamin Johnson at Defendants' expense. It appears that the person with the best knowledge regarding the investigative file and the contents therein is Lt. Steven Johnson.

Finally, the court is not convinced that there exists a second database searchable by nature of the complaint. Even if such a database did exist, complaints of excessive force dating

more than three years prior to the incident at issue have very low probative value in this case. A special showing of need would be required for the court to order their production.

## V. Plaintiff's Second Motion to Compel

Plaintiff's Second Motion to Compel requests that the court compel production for document requests served on Defendants on August 28 and August 31, 2009. The August 28 document request sought "any and all documents relating to investigations into the use of force by the Rockford Police Department or any of its agents or employees, whether generated by a complaint against a member of the Rockford Police Department or as required by Rockford Police Department General Order No. 1.09 within the time period consisting of the 3 years prior to the incident that is the subject of this litigation, namely 2003, 2004, 2005." (Pl.'s Second Mot. to Compel ¶ 1.) The August 31 document request sought "any and all documents relating to investigations into the use of force, either lethal or less than lethal, by the Rockford Police Department or any of its agents or employees, whether generated by a complaint against a member of the Rockford Police Department or as required by Rockford Police Department General Order No. 1.09, from January 1, 2003 through the present." (*Id.* ¶ 2.) The August 31 document request also sought "the production of database printouts concerning summaries of internal investigations of use of force required by General Order No. 1.09 § VI from January 1, 2003 to the present." (*Id.*) Plaintiff asserts that Defendants failed to respond timely to these document requests, prompting Plaintiff's Second Motion to Compel.

Defendants have now responded to both document requests. (Defs.' Resp. to Pl.'s Second Mot. to Compel Ex. 1.) The court also notes that production according to this court's order with regard to Plaintiff's First Motion to Compel and Plaintiff's Motion to Enforce, *supra*

Section III, might resolve the dispute presented by Plaintiff's Second Motion to Compel. Thus, the court denies Plaintiff's Second Motion to Compel without prejudice at this time. If there remain discovery disputes after the productions according to this order, parties should hold a Rule 37.2 conference and then file appropriate motions as needed.

## VI. Conclusion

Plaintiff's Motion to Enforce is granted in part. Defendants have until January 20, 2010 to produce the typed complaint summary sheets unredacted. Defendants have until January 20, 2010 to make the statistical summaries for the years 2003, 2004, and 2005 available to Plaintiff. Defendants may either produce the statistical summaries or indicate to Plaintiff a specific web address at which the summaries are available to the general public. Plaintiff's First Motion to Compel is denied without prejudice.

Plaintiff's Motion for Sanctions is granted in part. Defendants must reimburse Plaintiff for additional expenses and costs incurred as a result of reconvening Lt. Steven Johnson's deposition. Plaintiff is to submit a petition for fees to the court outlining the additional costs and expenses incurred.

Plaintiff's Second Motion to Compel is denied without prejudice.

ENTER:

_____
P. MICHAEL MAHONEY, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT

DATE: December 30, 2009